JSN/baw

# RANDALL SOUSA

REC FILED

2023 MAR 16 PM 4: 13    700 EAST MAIN STREET, # 970
RICHMOND, VIRGINIA 23218

TELEPHONE: (804) 372-7092
EMAIL: randallsousa@gmail.com

March 16, 2023

**VIA HAND-DELIVERY**

U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street
Richmond, Virginia 23219

> **Re:** Case No. 23-1020 *(Sousa v. Circuit Court of Fairfax County, et al.)*
> ***Appellant's Opening Brief and Correction to Pacer Caption***

To the Clerk of the 4th Circuit Court of Appeals,

My name is Randall Sousa, and I am the Appellant in the above-entitled action. Enclosed are one original and one copy of Appellant's Opening Brief. Please file the original and please stamp the other copy and return it to counsel.

Additionally, it should be noted that on PACER, Defendants David Bernhard and Charles Sharp are misspelled. Currently, David Bernhard is spelled "David Bernhardt." There is no "t" at the end of Bernhard. Likewise, Charles Sharp's name is spelled "Sharpe." There is no "e" at the end of Sharp.

Thank you for your attention to this matter.

Very Truly Yours,

RANDALL SOUSA

RECEIVED

2023 MAR 16 PM 4: 13

Randall Sousa
*Pro Se Plaintiff*
700 East Main Street, # 970
Richmond, VA 23218
Tel: (804) 372-7092
Email:randallsousa@gmail.com

## UNITED STATES COURT OF APPEALS

## FOURTH JUDICIAL CIRCUIT

RANDALL SOUSA,

      Plaintiff,

    v.

THE CIRCUIT COURT OF FAIRFAX
COUNTY; THE HONORABLE DAVID
BERNHARD; THE HONORABLE
CHARLES S. SHARP; and WILLBERG
TEDDY CHAPILLQUEN

      Defendants.

Case No. 23-1020

**APPELLANT RANDALL SOUSA'S
OPENING BRIEF**

**TABLE OF CONTENTS**

PAGE

**TABLE OF AUTHORITIES**................................................................ i – iii

I.     **JURISDICTIONAL STATEMENT** ............................................. 1

II.    **QUESTION PRESENTED / CRITERIA FOR REVIEW** ................... 1

III.   **SUMMARY OF ARGUMENT** ..................................................... 1

IV.   **RELEVANT FACUTAL ALLEGATIONS** ............................................ 2

  (A) THE JULY 30 SANCTION ORDER ......................................... 6

  (B) JUDGE BERNHARD'S EXTRAJUDICIAL INVESTIGATION AND INTENTIONAL INTERFERENCE WITH SOUSA'S ABILITY TO APPEAL ....10

  (C) RELEVANT EVENTS SUBSEQUENT TO THE ISSUANCE OF THE JULY 30 ORDER .................................................................... 13

V.    **PROCEDURAL BACKGROUND** ....................................... 14

VI.   **ARGUMENT** .................................................................... 16

  (A) ROOKER-FELDMAN DOES NOT APPLY TO MATTERS OF "EXTRINSIC FRAUD" WHICH COULD HAVE BEEN PRESENTED AS AN INDEPENDENT EQUITABLE ACTION UNDER STATE LAW ............................... 16

    1. *Because the July 30 and August 8 Orders Were Influenced by Extrajudicial Factors, Equity Demands that the Judgement Not Be Enforced* .................................................................. 19

    2. *There Exists a Good Defense to the Alleged Bases on Which the Judgement is Founded* ............................................ 24

    3. *Judge Bernhard's Extrinsic Misconduct Prevented Sousa from Obtaining the Benefit of His Defense* .......................... 24

    4. *Absence of Fault / Negligence* ....................................... 27

    5. *Sousa Lacks an Adequate Remedy at Law* ..................... 29

VII.  **CONCLUSION** ................................................................ 29

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                          **PAGE**

*Burrell v. Virginia*
    395 F.3d 508 (4th Cir. 2005) ........................................................... 1

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*
    911 F.2d 242 (9th Cir. 1990) .......................................................... 30

*Church of Jesus Christ of Latter-Day Saints v. Associated Contractors, Inc.*
    877 F.2d 938 (11th Cir. 1989) ................................................. 26-27

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*
    544 U.S. 280 (2005) ........................................................................ 18

*Gash Assocs. v. Rosemont*
    995 F.2d 726 (7th Cir. 1993) ...................................................... 2, 17

*Gordon v. United States*
    178 F.2d 896 (6th Cir. 1949) ......................................................... 23

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*
    322 U.S. 238 (1944) ........................................................................ 19

*Holloman v. Mail-Well Corp.*
    443 F.3d 832 (11th Cir. 2006) ....................................................... 26

*Home Design Servs. v. Park Square Enters*
    2006 U.S. Dist. LEXIS 7254 (M.D. Fla. 2006) ............................. 21

*Kougasian v. TMSL, Inc.*
    359 F.3d 1136 (9th Cir. 2004) .................................................. 17-18

*Sung Cho v. City of New York*
    910 F.3d 639 (2d Cir. 2018) .......................................................... 17

*Treadaway v. Academy of Motion Picture Arts & Sciences*
    783 F.2d 1418 (9th Cir. 1986) ....................................................... 18

## STATE CASES

*Canton Oil Corp. v. Dist. Court of Second Judicial Dist.*
   731 P.2d 687 (Colo. 1987)........................................................................... 21-22

*Charles v. Precision Tune, Inc.*
   243 Va. 313 (1992) ...................................................................................19

*Cortez v. Brown*
   2019 Tex.App.LEXIS 1480 (2019) ..............................................................25

*F.E. v. G.F.M.*
   35 Va. App. 648 (2001) ..................................................................... 16-17, 20

*Jones v. Willard*
   224 Va. 602 (1983) ...................................................................................17

*McCarthy v. Leiser*
   2020 Va.Unpub.LEXIS 14 (2020)......................................................... 11-12

*Oxenham v. Johnson*
   241 Va. 281 (1991) .....................................................................................9

*Peet v. Peet*
   16 Va. App. 323, 327 (1993) .............................................................. 20, 25-26

*State Farm Mut. Auto. Ins. v. Remley*
   270 Va. 209 (2005) ...................................................................................20

*Vinson v. Vinson*
   41 Va. App. 675 (2003) ..............................................................................25

*Virginia Polytechnic Inst. & State Univ. v. Prosper Fin., Inc.*
   284 Va. 474  (2012) ............................................................................ 18-19

*Wallace v. Richmond*
   67 Va. 67 (1875) .......................................................................................27

## <u>STATUTES</u>

ABA Model Rule 2.9(C) ..........................................................................21

Comment 6 to ABA Model Rule 2.9 .....................................................21

Virginia Code § 8.01-271 .......................................................................9

Virginia Code § 8.01-428 ................................................................18, 19

Virginia Supreme Court Rule 1:18B(VII) ...........................................7, 8

Virginia Supreme Court Rule 4:12(d) ...................................................8

Virginia Supreme Court Rule 5A:20 ....................................................24

## I.    JURISDICTIONAL STATEMENT

This matter is on appeal from a November 17, 2022, Order issued pursuant to Fed. R. Civ. P. 12(b)(1) by the United States District Court for the Eastern District of Virginia, the Honorable Michael S. Nachmanoff (the "District Court"), presiding. The District Court had subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1331, 42 U.S.C. § 1983, and 42 U.S.C. § 1988. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to hear this appeal because a final order has been entered and Appellant Randall Sousa ("Sousa") has filed a timely notice of appeal.

## II.   QUESTIONS PRESENTED / CRITERIA FOR REVIEW

Appellant Randall Sousa's claims for declaratory relief were dismissed pursuant to the *Rooker-Feldman* doctrine. A dismissal on *Rooker-Feldman* grounds is reviewed *de novo*. [*Burrell v. Virginia*, 395 F.3d 508, 511 (4th Cir. 2005)]. In deciding whether to affirm the District Court's Order dismissing Sousa's case with prejudice on *Rooker-Feldman* grounds, this Court need only answer the following question: Based on the allegations in the First Amended Complaint ("FAC"), would Sousa have been entitled, at the time he filed the instant action in District Court, to have filed an independent action at equity in Virginia State Court to set aside the July 30 Order on the grounds of extrinsic fraud?

## III.  SUMMARY OF ARGUMENT

The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set

aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion. [*Gash Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)].

As explained below, upon careful review of this record, it becomes apparent that at the time Sousa filed this action in District Court, he could have simultaneously asserted an independent state law action under Va. Code § 8.01-428(D) based on the same facts alleged in the FAC. Consequently, the District Court committed judicial error in dismissing Sousa's case with prejudice under the *Rooker-Feldman* doctrine. At the very least, Sousa should be granted leave to amend to clear up any imprecisions in his requests for relief, as well as to more precisely point out the basis for such relief.

## IV. RELEVANT FACTUAL ALLEGATIONS

At the time of the facts giving rise to this case, Sousa was an attorney who had been licensed to practice law in the Commonwealth of Virginia for fewer than 900 days. [Dkt. # 28, ¶ 12]. Relevant to the instant matter was Sousa's representation of Ms. Sara Chapilliquen ("Sara") in the Matter of *Chapilliquen v.*

*Chapilliquen* (the "State Court case"). Appellee Willberg Chapilliquen

("Willberg") was the plaintiff in the State Court case, and Sara was the defendant.

During the State Court case, Sousa, on Sara's behalf, served answers or

objections to each and every one of Willberg's discovery requests. Nevertheless,

on April 26, 2019, Willberg's attorney, Erin C. Barr ("Barr"), moved to compel

more complete responses and for an order overruling the objections. [*Id.*, ¶ 37].

The motion to compel was ultimately granted, and "[d]efendant [Sara

Chapilliquen] was ordered to provide full and complete responses by May 3,

2019." [*Id.*, ¶ 38; Dkt. # 2 at 14:3-7].

The State Court Case was eventually set for a two-day trial scheduled to

begin on June 11, 2019, in the Circuit Court of Fairfax County, the Honorable

David Bernhard ("Judge Bernhard"), presiding. On June 4, 2019, seven days prior

to trial, Barr filed an evidentiary motion in limine without noticing the motion or

filing a praecipe. Barr later admitted under oath that she did not notice the motion.

[Dkt. # 28, ¶¶ 40-41]. The motion in limine sought to exclude Sara from providing

any testimony, introducing any witnesses, or introducing any exhibits in her case-

in-chief. It further sought relief in the form of all costs and attorney's fees

"incurred in bringing this action" because Sara had failed to provide "full answers

to interrogatories and responses to requests for production." As a point of

reemphasis, the motion was ***not noticed*** for a hearing, and Barr admitted as much under oath in a later proceeding. [*Id.*, ¶ 43]

On the day of trial, Barr opened by moving in limine to exclude Sara's ability to present any evidence or testimony in her case-in-chief. [*Id.* ¶ 46; Dkt. # 2 at 28:2-29:10]. For another seven (7) pages of transcript, Sousa provides a rebuttal argument to Barr's opening. [Dkt. # 2 at 29:14-36:3]. Instead of issuing a ruling on the motion, Judge Bernhard left the door open, and did not even provide Barr with the chance to reply to Sousa's rebuttal. Instead, Judge Bernhard stated he "may restrict what evidence ends up before the Court, but the Court will do what the evidence calls for." [Dkt. # 28, ¶ 48; Dkt. # 2 at 36:8-10].

Halfway through the trial, the argument over the motion in limine comes up again. [Dkt. # 28, ¶ 49; Dkt. # 2 at 195]. As he had before, Judge Bernhard did not issue a definitive ruling, and instead stated that "we'll deal with it as it comes up." [Dkt. # 28, ¶ 49; Dkt. # 2 at 198:11-5]. A few moments later, Bernhard brings up the motion in limine again by explaining the issue facing the Court: "The question is whether she can testify in light of the discovery responses…Now, the question is, we have interrogatory twenty-one, presumably her testimony would be as to the factors, and there's no…[t]here's no answer here." [Dkt. # 28, ¶ 50; Dkt. # 2 at 206:17-207:12].

Over the course of the next fifteen (15) pages of transcript, Sousa provides

further argument in opposition to Barr's motion in limine. [Dkt. # 28, ¶ 51; Dkt. #
2 at 207:13–222:23]. During his argument, Sousa expressed that to his recollection,
Sara had provided additional responsive discovery information to his Spanish-
fluent law clerk. He therefore wanted an opportunity to continue the matter in
order to "find that proof and bring it tomorrow…and if I don't have it, Your
Honor, I'll be the first to say I don't have it." [Dkt. # 28, ¶ 52; Dkt. # 2 at 209:8-
17]. Sousa made clear that if he was going to make the representation that
supplemental discovery responses were actually provided to opposing counsel, "I
think an opportunity to go look and bring it is reasonable, Your Honor, especially
at this late hour in the day." [Dkt. # 28, ¶ 53; Dkt. # 2 at 210:24-211:5]. Judge
Bernhard continued to needle Sousa by pressing him for an answer as to the
precise time when Sara provided supplemental discovery responses. Sousa's
response was crystal clear: "I don't recall, and I don't like to make
misrepresentations, and I don't like to lead the Court wrong, so what I do like to
ask is a little leeway at 4:30 in the afternoon." [Dkt. # 28, ¶ 54; Dkt. # 2 at 216:17-
217:2].

After hearing what was clearly over five (5) minutes' worth of argument
from Sousa, Judge Bernhard then asked to "hear from opposing counsel." [Dkt. #
28, ¶ 55; Dkt. # 2 at 222:24-223:3]. Finally, on page 226 of the transcript,
Bernhard issued the following order as to the motion in limine: "***I'm not going to***

***permit her to testify*** because there no evidence that she responded to interrogatory twenty-one." [Dkt. # 28, ¶ 56; Dkt. # 2 at 226:11-13 (emphasis added)].

It should be emphasized that the motion in limine sought not merely to limit evidence, but also an award of "all fees and costs, including attorney fees and translator costs, incurred in bringing this action." [Dkt. # 28; ¶ 57; Dkt. #1-4 at p. 2]. Consequently, the amount of time dedicated to arguing the motion in limine's request for attorney's fees spilled over into Barr's "closing" argument. When Barr began her argument on fees, Judge Bernhard instructed her to make her argument for fees "as part of closing." [Dkt. # 28, ¶ 58; Dkt. # 2 at 235:2-7]. At the conclusion of trial, Judge Bernhard ***denied*** Sousa's request for a continuance, but also told Sousa that "if you come up with compelling evidence that you provided discovery, I will consider reopening the evidence, but for now…I'm not persuaded that discovery was answered[.]" [Dkt. # 28, ¶ 59; Dkt. # 2 at 275:2-10].

### (A) THE JULY 30 SANCTION ORDER

Subsequent to trial, Judge Bernhard issued a sanction order on July 30, 2019 (the "July 30 Order") wherein Judge Bernhard needlessly attacked and mocked the intelligence, professionalism, experience, and character of a newly minted member of the Virginia Bar who had been licensed to practice law a mere two-and-a-half years.

After waxing poetic for twenty (20) pages regarding irrelevant and inapplicable legal authority, Judge Bernhard sanctioned Sousa personally in the amount of $11,000 under Virginia Supreme Court Rule 4:12(d) and Virginia Code § 8.01-271.1. [Dkt. # 28, ¶ 61; Dkt. # 1-5 at p. 20]. The July 30 Order notes that "[o]f this [$11,000] sum, $775.00 was previously ordered only against [Sara] by an order of another judge...on April 26, 2019...but now becomes a sanction for which Mr. Sousa is ***jointly obligated***." [Dkt. # 28, ¶ 108; Dkt. # 1-5 at p. 21, fn. 10 (emphasis added)]. On August 8, 2019, Judge Bernhard entered a Final Order of Divorce, which incorporated the July 30 Order by reference. [Dkt. # 40-1 at pp. 6-7]. For purposes of equity, it is important to note that the July 30 Order was issued in derogation of Sousa's Fifth Amendment Right to Due Process, and his Eighth Amendment Right to be Free from Excessive Fines.

As to Sousa's due process rights, a scheduling order issued in the State Court case, as well as Va. Sup. Ct. Rule 1:18B(VII), explicitly mandate that absent leave of court, any motion in limine which requires argument exceeding five (5) minutes must be ***duly noticed*** and heard ***before*** the day of trial. [Dkt. # 28, ¶ 71]. Given that the trial transcript demonstrates that argument on the motion in limine extended for at least twenty (20) pages, there can be no dispute that the motion required more than five (5) minutes of argument. [Dkt. # 28, ¶¶ 46-51; Dkt. # 2 at 28:2-36:10, 206:17-222:23]. Despite taking more than five (5) minutes to argue,

the motion was neither properly noticed, nor heard before the day of trial. Instead, Judge Bernhard heard the motion ***during the actual trial itself***. Furthermore, the motion did not seek attorney's fees from Sousa personally, but from Sousa's client, Sara. [Dkt. # 28, ¶¶ 40-45, 73]. Sousa thus had no notice fees would be imposed against him personally. Accordingly, the sanctions imposed by Judge Bernhard were imposed in derogation of Sousa's rights under the Fifth Amendment, as well as Va. Sup. Ct. R. 1:18B—which is intended to serve as a statutory embodiment of the Due Process Clause with respect to motions in limine. [*Id.*, ¶ 74].

As to the violation of Sousa's Eight Amendment right to be free from excessive fines, Judge Bernhard imposed a sanction of $11,000 in attorney's fees pursuant to Va. Sup. Ct. R. 4:12(d) "in consequence for Sousa's willful and negligent thwarting of the orders of this Court compelling discovery." [*Id.*, ¶ 83; Dkt. # 1-5 at p. 20]. The problem is that Rule 4:12(d) sanctions only apply when a party completely fails to respond to discovery requests, such as not appearing at a deposition after proper service or not responding at all to a set of interrogatories. Notwithstanding the fact that Rule 4:12(d) sanctions only apply when an attorney completely fails to appear at a deposition or serve answers or objections to discovery, Judge Bernhard sanctioned Sousa under this rule after having just ***literally admitted in writing that Sousa <u>did respond</u> to discovery with objections***.[See, Dkt. # 28, ¶ 91; Dkt. # 1-5 at p. 5].

Judge Bernhard also sanctioned Sousa under Code § 8.01-271 because "Sousa made an oral motion for continuance…in which he stated to the Court that he had complied with the Court's orders to compel and had supplemented discovery" and although "the motion for a continuance was ***denied***, the Court did allow Sousa to provide the Court such substantiation post-trial." But because "[n]o such post-trial filing was forthcoming…the Court…concludes that Sousa was untruthful to the Court…in violation of Va. Code § 8.01-271.1." [Dkt. # 28 at ¶ 96; Dkt. # 1-5 at p. 18 (emphasis added)].

The problem is that Va. Code § 8.01-271.1 imposes no continuing duty upon a lawyer to update his pleadings in light of any new findings. [*Oxenham v. Johnson*, 241 Va. 281, 287 (1991)]. Given that Judge Bernhard acknowledged denying the motion for continuance, there was no continuing duty for Sousa to update Judge Bernhard. Furthermore, Sousa never represented that he had served updated interrogatories, but instead stated "I don't recall and I don't like to make misrepresentations, and I don't like to lead the Court wrong, so what I do like to ask is a little leeway" so Sousa could return to his office to make sure the documents were there. [Dkt. # 28, ¶¶ 97-99; Dkt. # 2 at 216:17-217:2]. Conveniently, Judge Bernhard omitted the foregoing colloquy from the July 30 Order, and then sanctioned Sousa for "lying."

**(B)** **JUDGE BERNHARD'S EXTRAJUDICIAL INVESTIGATION AND INTENTIONAL INTERFERENCE WITH SOUSA'S ABILITY TO APPEAL**

As alleged in the FAC and as supported by evidence within this federal record, "[c]oncurrent with his drafting of the July 30 Order, Judge Bernhard, acting outside of his official duties, conducted an extrajudicial investigation into Sousa and his law practice, and then submitted the 'findings' of that investigation to the Virginia State Bar ("VSB"), along with the July 30 Order, as some manner of 'bar complaint' against Sousa." [Dkt. # 28, ¶ 103]. Notably, Judge Bernhard sent the VSB two (2) separate complaints. The first on July 30, 2019, and the second on August 8, 2019.

The contents of Judge Bernhard's complaints reveal that during the pendency of the State Court case, Judge Bernhard decided to go on his own personal fact-finding mission by searching Sousa's website, his Yelp and Google reviews, as well as his court filings in other cases. Then, after harvesting what he believed to be 'inculpatory' evidence, Judge Bernhard attached and intermingled the findings of this extrajudicial investigation with the July 30 Order, and then sent it to the VSB as a 'bar complaint' against Sousa for the purpose of interfering with Sousa's ability to properly appeal Judge Bernhard's unconstitutional July 30 Order. [Dkt. # 28, ¶¶ 103-105; Dkt. # 42-1].

Oddly, when providing evidence of Sousa's Google reviews to the VSB, Judge Bernhard only included the four (4) worst reviews by supposed clients, and

completely omitted the many numerous positive reviews. [Dkt. #42-1 at pp. 6-7].

Given the flagrantly biased nature of Judge Bernhard's actions, the only

perceptible motivation for interfering with Sousa's ability to appeal was because

the July 30 Order was rife with appealable issues which Judge Bernhard had ruled

on after having already been influenced by his extrajudicial investigation.

As a point of emphasis, this is not the first time Judge Bernhard has crossed

all legal and ethical boundaries by conducting extrajudicial investigations into

parties (and their attorneys) while a case involving those parties was currently

pending before his court. For example, in *McCarthy v. Leiser*, 2020

Va.Unpub.LEXIS 14 (2020), the Virginia Supreme Court, in an unpublished

opinion, briefly mentions that Judge Bernhard conducted an extrajudicial

investigation in the *McCarthy* case, but incredibly, the opinion does not even

mention Judge Bernhard by name. Even more troubling is that the opinion

acknowledges that Judge Bernhard did indeed engage in an extrajudicial

investigation, but the Virginia Supreme Court's opinion makes absolutely no

mention of the unlawful nature of Judge Bernhard's conduct, nor does it admonish

Judge Bernhard in any way. [Dkt. # 42-2]. The only way to discover the identity of

the unnamed judge in the Virginia Supreme Court's unpublished *McCarthy*

opinion is by locating a copy of McCarthy's appellate brief. [Dkt. # 42-3]. Put

simply, the *McCarthy* opinion reveals that the Virginia Supreme Court actively attempted to sweep Judge Bernhard's misconduct under the rug.

As a result of the July 30 Order's legally offensive nature, Sousa filed an appeal in Sara's name because the July 30 Order, as well as the Final Order, imposed a significant amount of relief against ***both*** Sara and Sousa. [Dkt. # 28, ¶ 109]. The intention was thus to address all of Judge Bernhard's errors in the appeal filed on Sara's behalf. [*Id.*, ¶ 110]. But instead of letting the case run its normal course through the appellate process, Judge Bernhard, with sinister and improper motives, utilized the July 30 Order as a pretext to send a complaint to the VSB for the purpose of interfering with Sousa's ability to appeal the biased and unconstitutional July 30 Order. [Dkt. # 28, ¶ 105].

Indeed, Judge Bernhard's sinister intent to interfere with Sousa's appellate rights is laid bare by the contents of his letter to the VSB which urges the VSB to conduct an immediate, "***early***" investigation into Sousa and his law practice. [Dkt. # 42-1 (emphasis added)]. Upon receiving Judge Bernhard's complaint, the VSB subpoenaed Sousa to turn over all documents related to his representation of Sara. When Sousa refused on the grounds of privilege because the action was still pending—but would have given the VSB everything upon the case's finality—the VSB suspended Sousa's law license. [Dkt. # 28, ¶ 112; Dkt. # 45-1]. As a brief aside, had it been Sara who filed a bar complaint, Sousa would have immediately

given the VSB whatever they wanted. But it was not Sara who complained. It was Judge Bernhard. [*Id.*, ¶ 113].

Because he was no longer a licensed attorney, Sousa was under the impression that he was now required to file a new appeal in his own name. But because the 30-day time limit to file a notice of appeal had lapsed, Sousa believed that he no longer had any opportunity for appeal. [*Id.*, ¶¶ 114-115].

**(C) RELEVANT EVENTS SUBSEQUENT TO THE ISSUANCE OF THE JULY 30 ORDER**

Subsequent to Judge Bernhard's issuance of the July 30 Order, every single one of the judges in the Circuit Court of Fairfax County was indefinitely recused from the administration of any matter involving Sousa. [Dkt. # 28, ¶ 121]. The Virginia Supreme Court thereafter issued an Order appointing Judge Charles Sharp ("Judge Sharp") to handle any and all matters involving Sousa. [*Id.*, ¶ 5]. This included Sousa's own personal divorce case, as well as a criminal case where, subsequent to the July 30 Order, Sousa was levied with a 45-day jail sentence for "failing to appear" on behalf of a client in a Fairfax District Court traffic matter.

On November 12, 2021, Attorney Barr, on behalf of her client Willberg, filed a Motion to Enforce Payment of the July 30 Order. [Dkt. # 11 at p. 12; Dkt. # 1-6]. The hearing was set for January 18, 2022. Originally, Barr had prevailed on her first motion to collect fees, but because Sousa was mistakenly required to remit payment directly to the Commonwealth instead of Attorney Barr or her client.

Consequently, the money had been returned to Sousa, and Barr again sought to collect that money. Because Sousa had already made the relevant constitutional arguments before, but was still jailed until the sanction was paid, it was crystal clear that he would suffer the same fate once again. [Dkt. # 28, ¶ 122].

As a result of the *McCarthy* decision—which clearly demonstrated an unbridled willingness on the part of the Virginia judiciary to conceal Judge Bernhard's unethical conduct—it became apparent that Sousa had absolutely no chance of seeking relief at the State level pursuant to Va. Code § 8.01-428. Consequently, Sousa filed this federal action on November 26, 2021, in the United States District Court for the Eastern District of Virginia.

## V.   PROCEDURAL BACKGROUND

In the original Complaint, Sousa sought purely prospective relief against the Fairfax Circuit Court and Willberg. [See, Dkt. # 1, ¶¶ 102-105, p. 21; see also, Dkt. # 1-6]. The reason any and all relief sought at that time was "prospective" was because Sousa had not yet been forced to pay the $12,338.00 sanction imposed in the July 30 Order. On November 30, 2021, Sousa filed in Virginia circuit court a Motion to Stay Willberg's Motion to Enforce the July 30 Order pending the outcome of this federal case.

After Sousa's Motion to Stay was set for a January 7, 2022, hearing, Judge Sharp denied Sousa's motion on the grounds such denial "would have ***no impact***

*whatsoever* on the Federal Court's ability to make its own judgment based on what is before it." [Dkt. #13-6 at p. 2 (emphasis added)]. Judge Sharp also made clear that "what is before the State Court...are...issues that are ***limited to the procedures that were undertaken to _enforce_ this debt***." [*Ibid.* (emphasis added)]. In other words, Judge Sharp would not be hearing any challenge to the July 30 Order or its constitutionality, but rather, would only decide whether the collection procedures were proper.

Because Judge Sharp was actively interfering with his ability to seek prospective relief in federal court, Sousa filed an emergency motion for a temporary restraining order on January 11, 2022, in District Court, seeking to maintain the status quo by enjoining enforcement of the July 30 Order pending a hearing on a preliminary injunction. [Dkt. # 11]. The District Court was unable to address the motion in time, and Sousa was subsequently jailed until his elderly parents paid the sanction. [Dkt. # 28 at ¶ 121]. The District Court ultimately denied the TRO. [Dkt. # 17]. In granting Willberg's Motion to Enforce the July 30 Order, Judge Sharp ordered that as an outgrowth of the July 30 Order, an additional $1,305 be paid by Sousa. The final $1,305 would need to be paid on or before April 15, 2022. Sousa has not paid any of the remaining $1,305. [Dkt. # 28, ¶ 124].

Subsequent to the imposition of this additional fine, Sousa filed the FAC adding Judge Sharp and Judge Bernhard as defendants. [Dkt. # 28]. In response,

Defendants Circuit Court of Fairfax, Judge Sharp, and Judge Bernhard ("Judicial Defendants") filed a motion to dismiss on the grounds of Eleventh Amendment immunity; judicial immunity; *Younger* abstention; the *Rooker-Feldman* doctrine; statute of limitations; and failure to state a claim. [Dkt. # 40 at pp. 6-13]. Sousa filed a timely opposition [Dkt. # 42]; Judicial Defendants filed a reply [Dkt. # 44]; and Sousa objected to new arguments raised in the reply. [Dkt. # 45].

On November 11, 2022, the District Court dismissed Sousa's claims with prejudice solely on *Rooker-Feldman* grounds because (1) plaintiff complains of and seeks redress for an injury—the $11,000 sanction—explicitly caused by the Circuit Court's Order; (2) by asking this Court to render the "July 30 Order" void, invalid, and unenforceable, plaintiff is specifically seeking review and rejection of the state-court decision; and plaintiff's claims stem entirely from the state-court decision and have no independent basis. [Dkt. # 47 at p. 6]. The District Court did not address any of Judicial Defendants' other arguments. Sousa filed a timely notice of appeal.

## VI. ARGUMENT

### (A) ROOKER-FELDMAN DOES NOT APPLY TO MATTERS OF "EXTRINSIC FRAUD" WHICH COULD HAVE BEEN PRESENTED AS AN INDEPENDENT EQUITABLE ACTION UNDER STATE LAW

The term extrinsic fraud refers to conduct "which occurs outside the judicial process and…which prevents a fair submission of the controversy to the court."

[*F.E. v. G.F.M.*, 35 Va. App. 648, 659-660 (2001); see also, *Jones v. Willard*, 224 Va. 602, 607 (1983) ("the judgment of a court, procured by extrinsic fraud, *i.e.*, by conduct which prevents a fair submission of the controversy to the court, is void and subject to attack, direct or collateral, at any time.")]. Because the injuries produced by extrinsic fraud are not considered "judicial error," these injuries cannot be said to be "caused" by the state court judgment. Instead, these injuries are characterized as being "ratified" by the state court judgment. [See, *Sung Cho v. City of New York*, 910 F.3d 639, 645-646 (2d Cir. 2018)].

To be clear, Sousa is not arguing that a "fraud exception" to *Rooker-Feldman* exists. It does not. Instead, an exception to *Rooker-Feldman* exists based on "extrinsic fraud" if, ***and only if***, the facts alleged in federal court could have also been presented as an independent equitable claim under state law. [*See, e.g., See, e.g., Gash Assocs.*, 995 F.2d at 728 ("The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.")].

By way of example, in *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004), the 9th Circuit Court of Appeals found that because California law provided

for an independent action at equity to set aside a judgment obtained by extrinsic fraud, a claim based on such equitable principles need not be brought in the state court that rendered the challenged judgment. In other words, *Rooker-Feldman* does not apply if a plaintiff whose factual allegations of extrinsic fraud in a federal pleading could also serve as sufficient grounds for an independent action in state court to set aside the underlying judgment. [See, *Id.* at 1141]. Under these extremely narrow circumstances, *Rooker-Feldman* does not serve to obstruct federal jurisdiction—and not because of extrinsic fraud alone, but because under state law, the action would have been treated as independent of the underlying judgment. [See, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.* 544 U.S. 280, 293 (2005); see also, *Treadaway v. Academy of Motion Picture Arts & Sciences*, 783 F.2d 1418, 1420 (9th Cir. 1986) (explaining that power of courts to entertain independent actions "is one that is rooted in tradition and governed by general equitable principles").].

Like the California statute in *Kougasian*, Virginia Code § 8.01-428 allows for the state court to "entertain at any time an independent action to relieve a party from any judgment or proceeding…or to set aside a judgement or decree for fraud upon the court." [Va. Code § 8.01-428(D)]. The party seeking to set aside a judgment in an independent action pursuant to Va. Code § 8.01-428(D) must prove (1) the judgment ought not, in equity and good conscience, be enforced; (2) there is

a good defense to the allegations on which the judgment is founded; (3) fraud, accident, or mistake prevented the party from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law. [*Virginia Polytechnic Inst. & State Univ. v. Prosper Fin., Inc.*, 284 Va. 474, 483 (2012), citing *Charles v. Precision Tune, Inc.*, 243 Va. 313, 317-318 (1992)].

As explained below, when looking to the FAC and the evidence in the record, it becomes readily apparent that at the time Sousa filed this action in the District Court, he could have simultaneously asserted an independent state law action under Va. Code § 8.01-428(D) based on the same set of facts in the FAC.

### (1)  Because the July 30 and August 8 Orders Were Influenced by Extrajudicial Factors, Equity Demands that the Judgement Not Be Enforced

"Fraud on the court" is defined not in terms of the content of a particular misrepresentation or deception, but in terms of its effect on the judicial process. For this reason, "fraud on the court" is limited to matters which pose a threat to the integrity of the normal processes of adjudication. [*See, e.g., Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (fraud on court "is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society").]. When relying on "fraud on the court" as the basis for an independent

action under Va. Code § 8.01-428, the fraud must be "extrinsic" in nature. "Extrinsic fraud is fraud which occurs outside the judicial process" and "which prevents a fair submission of the controversy to the court." [*Peet v. Peet*, 16 Va. App. 323, 327 (1993); see also, *G.F.M.*, 35 Va. App. at 659-660]. Where extrinsic fraud is present, "[a] collateral challenge to a judgment…is allowed because such fraud perverts the judicial processes and prevents the court or non-defrauding party from discovering the fraud through the regular adversarial process." [*Ibid.*]. A judgment procured by extrinsic fraud "is void and subject to attack, direct or collateral, at any time." [*State Farm Mut. Auto. Ins. v. Remley*, 270 Va. 209, 218 (2005)].

In the FAC, Plaintiff alleged that concurrent with his drafting of the July 30 Sanction Order, Judge Bernhard, ***acting outside of his official duties***, conducted an extrajudicial investigation into Sousa and his law practice by searching Sousa's website, his Yelp and Google reviews, and his filings in other cases. Then, he attached and intermingled the findings of this extrajudicial investigation with the July 30 Order and sent it to the VSB as a "bar complaint." [Dkt. # 28, ¶¶ 103, 105]. After receiving the bar complaint, the VSB subpoenaed Sousa to turn over all documents related to the State Court case. But when Sousa refused on the grounds of privilege because the action was still pending—but would have been more than willing to turn the documents over upon the case's finality—the Virginia Bar

immediately suspended Sousa's law license. [Dkt. # 28, ¶ 112; see also, Dkt. # 45-1 at p. 2, fn. 28 ("the Board, without a hearing, entered its Interim Suspension Order on November 6, 2019").].

Simply put, a judge's investigation undertaken outside the presence of all parties to a judicial proceeding is diametrically opposed to the parties' fundamental right to be heard in an adversarial system. Here, Judge Bernhard's independent investigation, in which he apparently stepped into the role of amateur sleuth, was clearly outside of a judge's "official duties" because ABA Model Rule 2.9(C) makes explicit that "[a] judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." [ABA Rule 2.9(C) (2020)]. The commentary to Rule 2.9 further clarifies that "the prohibition against a judge investigating the facts in a matter extends to information available in all mediums, ***including electronic***." [*Id.*, Comment 6 (emphasis added)].

"Obviously, an extrajudicial investigation by a judge into the facts of a case would likely create due process implications as well as call into question the judge's impartiality." [*Home Design Servs. v. Park Square Enters*, 2006 U.S. Dist. LEXIS 7254, at *28 (M.D. Fla. 2006)] "[A]nd to assume that [the] mind was uninfluenced by the extrajudicial investigation…finds no sanction in the law. Such conduct deprives [the parties] of the fair and impartial trial to which every litigant

under our law is entitled." [See, *Canton Oil Corp. v. Dist. Court of Second Judicial Dist.*, 731 P.2d 687, 696 (Colo. 1987)].

The allegations in the FAC, and the evidence within the record, categorically establish that Judge Bernhard went outside his official duties and harvested personal information about Sousa. [Dkt. # 42-1]. Then, after having been infected and influenced by the findings of this extrajudicial investigation, Judge Bernhard penned the July 30 Order. That July 30 Order was completely infected by the poison Judge Bernhard drank when he decided to go outside his official duties by engaging in an extrajudicial investigation. He then used that infected order as a basis to lodge a bar complaint against Sousa ***while the case was still pending***.

It is noteworthy to mention that a judge violates the Judicial Code's requirement to remain impartial when they attempt to remove counsel from a case without a litigant's consent and without a legal basis. [*See, e.g., Judicial Inquiry & Review Bd. of Supreme Court v. Fink*, 532 A.2d 358, 365 (1987) (judge attempted to convince the son of a litigant that the father's lawyer was not to be trusted).]. In this case, after penning the biased and infected July 30 Order, Judge Bernhard sent that order to the VSB as a "bar complaint" against Sousa for the purpose of undermining the attorney-client relationship between Sara and Sousa, and to obstruct Sousa and Sara's ability to properly appeal the July 30 Order.

Judge Bernhard's unlawful intent to interfere with both and Sara and

Sousa's right to appeal is laid bare by the contents of his bar complaint which urges the VSB to conduct an immediate, "early" investigation into Sousa and his law practice, as well as his explicit acknowledgment that Sara would be unable to afford another lawyer. [Dkt. # 42-1; see also, Dkt. # 1-5 ("Early in the litigation and by affidavit, [Sara] asserted that she never earned money for herself...and had to resort to a loan from her son to fund her attorney's fees.")].

When stepping back and viewing Judge Bernhard's actions through the lens of his own professional experience, it would strain credulity to assert that he was unaware that his request for an "early" investigation would lead to immediate administrative action by the VSB; would result in fraying the attorney-client relationship; and would further strain Sousa's extremely limited resources as a solo practitioner charging what were essentially pro bono rates to non-English speaking Latinos. [Dkt. # 28, ¶ 13].

"So fraught with possible injustice and peril to the rights of a party is the conduct of a judge in conducting a private and extrajudicial investigation on a matter pending before him that courts have invariably held it to be reversible error where it may have partially influenced decision or judgment." [*Gordon v. United States*, 178 F.2d 896, 901 (6th Cir. 1949)]. In this case the July 30 Order (1) was influenced by Judge Bernhard's biased extrajudicial investigation; (2) was violative of Sousa's Fifth and Eighth Amendment rights; (3) was not a product of

rational logic, but of something completely outside the realm of sound judicial reasoning; and (4) was then used, despite its biased and verifiably frivolous bases, as a means to initiate administrative action by the VSB against Sousa while the State Court Case was still pending. The most perceptible motivation for interfering with Sousa's ability to appeal was because the July 30 Order was rife with appealable issues—issues which Judge Bernhard had ruled on after having already been influenced by his extrajudicial investigation.

In sum, this was not judicial error; it was a purposeful exploitation of Judge Bernhard's position as a judge in order to advance his own personal interests. Equity thus demands that the sanctions in the July 30 Order not be enforced.

### (2) There Exists a Good Defense to the Alleged Bases on Which the Judgement is Founded

A precondition for relief under Va. Code § 8.01-428 is that the movant show that they have a meritorious claim or defense. Sousa meritorious defense has already been discussed in § IV(A), *supra*, wherein he provided a detailed recitation of precisely why the sanctions imposed in the July 30 Order were in violation of his fundamental rights to due process and to be free from excessive fines. [See, Dkt. # 28, ¶¶ 40-45, 69-102]. For brevity, these arguments need not be repeated.

### (3) Judge Bernhard's Extrinsic Misconduct Prevent Sousa from Obtaining the Benefit of His Defense

Virginia Supreme Court Rule 5A:20 governs the filing of the opening briefs of an appellant. Virginia's prior cases recognize that when a lawyer becomes an

aggrieved party in a circuit court proceeding, such as after an award of sanctions against them, they **may** file a brief their own name challenging the adverse ruling. [*See, e.g., Vinson v. Vinson*, 41 Va. App. 675, n.1 (2003) (recognizing that a sanctioned attorney **could** file an appellate brief in his own name even though the case remained styled in the name of the parties).].

By contrast, in Texas, "when an attorney and his client are both sanctioned, and both wish to appeal the sanctions order…it is essential that both the client and the attorney be named as appellants in the notice of appeal. This is because a client lacks standing to appeal sanctions imposed on her attorney. This rule should apply with even greater force in cases…where only the attorneys are sanctioned." [*Cortez v. Brown*, 2019 Tex.App.LEXIS 1480, at \*5 (2019) (citation omitted)].

In the FAC, Sousa alleges that of the $11,000 fine against him in the July 30 Order, $775.00 of that sum would be a sanction for which Sousa and Sara were "jointly obligated." As a result of this "joint obligation," Sousa filed an appeal in Sara's name because the July 30 Order imposed a joint sanction against Sara and Sousa." [Dkt. # 28, ¶ 108-109]. Thus, the intention was to address all of Judge Bernhard's errors—including his unconstitutional imposition of sanctions against Sousa—in the appellate brief filed in Sara's name.

Extrinsic fraud is fraud which occurs outside the judicial process, and which prevents a fair submission of the controversy to the court." [*Peet*, 16 Va. App. at

327]. In this case, Judge Bernhard, with sinister and unlawful motives, went

outside his official duties and harvested personal information about Sousa; penned

the July 30 sanction order while infected by that extrajudicial information; and

then sent the July 30 Order, along with the findings from his extrajudicial

investigation, to the VSB as a "bar complaint." [Dkt. # 42-1]. Based on this false

bar complaint, the VSB subpoenaed Sousa to turn over all documents related to his

representation of Sara. When Sousa refused on the grounds of privilege ***because***

***the action was still pending***—but would have given the VSB everything upon the

case's finality—the VSB suspended Sousa's law license. [Dkt. # 28, ¶¶ 112, 113].

Because his license had been suspended, and because he had failed to

originally appeal the State Court matter in both Sara's and Sousa's names

independently, Sousa was under the impression that the 30-day time limit to file a

notice of appeal had lapsed. [*Id.*, ¶¶ 114-115]. Sousa still is unsure if he is

mistaken, and the law remains conflicting. [*See, e.g.*, *Holloman v. Mail-Well*

*Corp.*, 443 F.3d 832, 844-45 (11th Cir. 2006) (distinguishing between notices of

appeal involving "sanctions on the plaintiff and the attorney jointly" as opposed to

"sanctions imposed only against the attorney…[where] the notice of appeal only

listed the client as an appellant."); but see, *Corp. of the Presiding Bishop of the*

*Church of Jesus Christ of Latter-Day Saints v. Associated Contractors, Inc.*, 877

F.2d 938, 939 n.1 (11th Cir. 1989) (explaining "it would be unjust to refuse to hear

counsel's appeal" simply because attorney did not file the notice of appeal in his name as well as the client's name).]. To be sure, even if Sousa was mistaken, his mistake was neither his fault nor a product of neglect.

### (4) Absence of Fault/Negligence

Courts have strictly applied the traditional rule that equity will set aside a judgment only when the party seeking relief sets forth grounds for relief that are "unmixed with any fault or negligence in himself or his agents." [*Wallace v. Richmond*, 67 Va. 67, 69 (1875)]. Here, there was no fault or negligence on Sousa's part for failing to proceed with the appeal in Sara's name alone because the circumstances were unprecedented.

Again, Judge Bernhard submitted the July 30 order to the VSB; the VSB subpoenaed Sousa to turn over all documents related to the State Court case despite the fact that State Court case remained open; and when Sousa refused to turn over the documents until the case was finalized, the VSB immediately suspended his law license. After suspending his law license based on Judge Bernhard's frivolous and personally vindictive bar complaint, Sousa lost everything. He had no incoming business; he had no money to pay his employees; he had no money to pay the rent at his office; he had no money to pay for Lexis or Westlaw; and he had no money to pay the lease on his apartment. Without the ability to provide for his family, to help his clients, or to fight against what appeared to be a concerted effort

to stamp out his ability to practice law, Sousa regrettably suffered a never before experienced manic episode which only further interfered with his ability to navigate his post-suspension affairs. [Dkt. # 45 at p. 3].

In the frenzy of attempting to address the suspension of his license, the loss of his ability to provide for his three children, his impending divorce, and the massive task of trying to set all of his former clients' affairs in order, Sousa mistakenly missed a court date in Fairfax. Despite having presented good cause for his failure to appear on behalf of a client in a traffic ticket matter, Sousa was sentenced by another judge in Fairfax to 45 days in jail. [See, Dkt. # 28, ¶ 123]. Notably, these criminal charges remained pending for 3 ½ years until they were recently dropped and dismissed in late February. [See, Fairfax Cir. Ct. Case # MI2020-139, 140].

As far as Sousa can tell, there has never been another case where a judge engaged in an extrajudicial investigation; drafted a sanction order against an attorney which was influenced by that extrajudicial investigation; submitted the sanction order and the findings of the extrajudicial investigation to the state bar while the case was being appealed; and while the case was pending on appeal, the state bar suspended the attorney's license for refusing to hand over documents in connection with a bar complaint submitted not by the client, but by the same judge whose sanction order was pending appeal. Never in the history of American

APPELLANT RANDALL SOUSA'S OPENING BRIEF

jurisprudence has there ever been a case with similar circumstances. And the reason there has never been a case with similar circumstances is because no judge has ever acted the way Judge Bernhard has acted.

Given the unprecedented circumstances of this case, and the administrative action taken by the VSB at the behest of Judge Bernhard, it would be inequitable to characterize Sousa's failure to properly navigate his personal and professional during this time as a product of his own fault or negligence. No one has ever faced what Sousa has been forced to face, and it could have all been avoided had the Virginia Supreme Court not engaged in a cover up of Judge Bernhard's misconduct in the *McCarthy* matter. [Dkt. # 42-3].

### (5) *Sousa Lacks an Adequate Remedy at Law*

The last element needed to assert a claim under Va. Code § 8.01-428 is the absence of an adequate remedy at law. Without belaboring the point, Sousa has never alleged remedies at law and Defendants have never argued that Sousa possesses an adequate remedy at law.

## VII. CONCLUSION

Because the facts alleged in the FAC can be extrapolated to assert an independent state law action under Va. Code § 8.01-428(D) at the time the district court case was filed, the District Court committed judicial error in dismissing Sousa's case with prejudice under the Rooker-Feldman doctrine. At the very least, Sousa should be granted leave to amend so long as the pleadings can be cured.

[See, *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)].

Date: March 16, 2023

**RANDALL SOUSA**